UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  5:26-cv-00610-MWC-PVC                                          Date: February 19, 2026

Title:     Beslan Borchashvili v. Fereti Semaia *et al.*

Present:  The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  (IN CHAMBERS) Order GRANTING Petitioner's *Ex Parte* Application for a Temporary Restraining Order (Dkt. [2])**

　　　Before the Court is Petitioner Beslan Borchashvili's ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") enjoining Respondents Fereti Semaia, Ernesto Santacruz, Jr., Todd M. Lyons, Kristi Noem, and Pamela J. Bondi (collectively, "Respondents")[1] from removing Petitioner from this Court's jurisdiction, mandating release from custody under the same conditions as Petitioner's earlier release, mandating Respondents to return to Petitioner all property confiscated from him during his arrest and processing into detention, and enjoining Respondents from re-detaining Petitioner absent notice and a pre-deprivation hearing.  *See generally* Dkt. # 2 ("*App.*").  Respondents opposed the Application, *see* Dkt. # 8 ("*Opp.*"), and Petitioner replied, *see* Dkt. # 9 ("*Reply*").  On the same day that Petitioner filed the Application, he filed a Petition for Writ of Habeas Corpus ("Petition").  *See* Dkt. # 1 ("*Pet.*").

　　　The Court issued a standing order on February 11, 2026, enjoining Petitioner's removal from the District pending further orders from the Court and setting a briefing schedule on Petitioner's Application.  *See* Dkt. # 5.

---

[1] The Application lists Fereti Semaia as the Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, Ernesto Santacruz, Jr. as the Director of the Los Angeles ICE Field Office, Todd M. Lyons as the Acting Director of ICE, Kristi Noem as the Secretary of the Department of Homeland Security ("DHS"), and Pamela J. Bondi as the Attorney General of the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-00610-MWC-PVC                                                     Date: February 19, 2026

Title:   Beslan Borchashvili v. Fereti Semaia *et al.*

For the reasons set forth below, the Court **GRANTS** the Application.

I.   Background

The Application details that Petitioner is a 37-year-old native and citizen of the Russian Federation.  *See App.* 3.  Immigration authorities paroled Petitioner into the United States on November 10, 2022, to allow him to pursue his claim for asylum.  *See id.*  On May 18, 2023, DHS initiated removal proceedings against Petitioner.  *See id.*  During his time in the United States, Petitioner has no criminal history.  *See id.*

On March 26, 2025, DHS detained Petitioner without explanation.  *See id.* 4.  DHS provided no warrant nor an individualized assessment regarding whether Petitioner posed a danger to the community or constituted a flight risk.  *See id.*

Respondents contest Petitioner's factual narrative in part.  They state that immigration authorities did not revoke Petitioner's parole, but that parole instead expired on November 9, 2023.  *See Opp.* 2.  They also note that DHS had previously scheduled a bond hearing for Petitioner set for October 1, 2025, but that prior to the hearing Petitioner's counsel filed a motion to continue it.  *See id.*  The Immigration Judge denied that motion and deemed the bond hearing withdraw without prejudice.  *See id.*  Lastly, Respondents offer that Petitioner has a hearing on the merits of his immigration status before an Immigration Judge set for March 26, 2026, at 8:30 a.m.  *See id.*

II.   Legal Standard

   A.   *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)).  "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-00610-MWC-PVC                                                   Date: February 19, 2026

Title:      Beslan Borchashvili v. Fereti Semaia *et al.*

1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

    B.    Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.    Discussion

    A.    *Ex Parte* Application and Mission Power Factors

Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since March 26, 2025, without receiving even a bond hearing to contest his detention. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days. Though Petitioner could have sought the TRO sooner, the fact that he provided

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-00610-MWC-PVC                                      Date: February 19, 2026

Title:      Beslan Borchashvili v. Fereti Semaia *et al.*

ICE time to give him some additional due process cannot cut against him. However, after nearly a year in continued detention without the requisite process, *ex parte* relief is warranted.

    B.    <u>Request for Release from Detention</u>

        *i.*    *Likelihood of Success on the Merits*

            a.    *Jurisdiction*

Respondents first argue that the Court lacks jurisdiction to provide Petitioner's requested relief. *See Opp.* 3–6. This argument is unavailing. In laying out their argument, Respondents primarily point to two provisions in the relevant statute: § 1252(b)(9) and § 1252(g). *See id.*

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).

In interpreting the statute, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), is instructive. The Supreme Court determined that the "arising from" language of § 1252(b)(9) does not mean that the provision covers every action that technically follows the commencement of removal proceedings, as that would bar judicial review of questions of law and fact that are unrelated to the removal proceeding until there was a final order of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:26-cv-00610-MWC-PVC                                                          Date: February 19, 2026

Title:   Beslan Borchashvili v. Fereti Semaia *et al.*

removal. *Jennings*, 583 U.S. at 292–95.  Like the class in *Jennings*, Petitioner here is "not asking for review of an order of removal," nor is he "challenging any part of the process by which [his] removability will be determined." *Id.* at 294.  Rather, he is contesting his unlawful detention.  *See generally App.*  "Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 582 U.S. at 294–95 (footnote omitted).

Respondents also point to § 1252(a)(5) in conjunction with § 1252(b)(9) in favor of their argument against this Court exercising jurisdiction.  *See Opp.* 5.  Section 1252(a)(5) states "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States]."  8 U.S.C. § 1252(a)(5).  As other courts have determined, a challenge to arrest and detention can be "independent of any future removal order."  *See Medina v. U.S. Dep't of Homeland Sec.*, No. C17-218-RSM-JPD, 2017 WL 2954719, at *15 (W.D. Wash. Mar. 14, 2017).  Here, Petitioner's challenge does not contest his removal, so § 1252(a)(5) is not a bar to this Court granting relief.

Respondents have also cited § 1252(g) to support their argument that the Court lacks jurisdiction to rule on the TRO.  That section reads:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter*.

8 U.S.C. § 1252(g) (emphasis added).  The same reasoning that applies to § 1252(b)(9) applies to § 1252(g).  *See Jennings*, 583, U.S. at 294 ("We did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves." (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999))).  Since Petitioner's challenge to his unlawful detention does not contest any decision to commence proceedings, adjudicate cases, or execute removal orders, § 1252(g)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:26-cv-00610-MWC-PVC | Date: February 19, 2026 |
| Title:  Beslan Borchashvili v. Fereti Semaia *et al.* | |

does not present a jurisdictional bar to judicial review. *See Alikhani v. Fasano*, 70 F. Supp. 2d 1124, 1126 (S.D. Cal. 1999) (stating that a challenge to a mandatory detention provision in that case did not "involve a decision to commence proceedings, to adjudicate cases, or to execute a removal order. Rather, petitioner's claims are unaffected by 1252(g) because they constitute general collateral challenges to unconstitutional practices and policies used by the agency." (quoting *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998), *cert. denied*, 526 U.S. 1003 (1999)) (internal quotation marks omitted)).  Thus, the Court can exercise jurisdiction over the Application and the Petition.

### b.    *Exhaustion of Administrative Remedies*

Respondents contest Petitioner's request for release from detention by arguing that he should instead receive a bond hearing under 8 U.S.C. § 1226(a). *See Opp.* 6.  They state that "Petitioner appears to be a member of the Bond Eligible Class certified in *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)" and admit that Petitioner is entitled to a bond hearing. *See id.*  What Respondents fail to address, however, is that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief. *See Lucena-Ojeda v. Noem*, No. 2:26-cv-00085-BAT, 2026 WL 279353, at *2 (W.D. Wash. Feb. 3, 2026) ("The Court also finds while Petitioner may request a bond hearing, a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty." (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1323–24 (W.D. Wash. 2025))).  Accordingly, because Petitioner lacks an alternative to seek the requisite pre-deprivation relief, the Court will not deny the Application for failure to exhaust administrative remedies.

### c.    *Request for Release from Detention*

Petitioner has demonstrated a likelihood of success on the merits of his request for release from detention.  He argues that immigration authorities deprived him of the procedural protections that the Due Process Clause of the Constitution requires. *See App.* 4.  "Given that due process interests are at stake, we look to the test outlined in" *Mathews v. Eldridge*, 242 U.S. 319 (1976). *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004).  There, the Supreme Court discussed the need to consider:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-00610-MWC-PVC                                    Date: February 19, 2026

Title:       Beslan Borchashvili v. Fereti Semaia *et al.*

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner has a reliance interest on the "implied promise" that immigration authorities would not revoke his liberty, and that reliance was justifiable given his compliance with all conditions applicable to his parole. *Cf. Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Petitioner's detention also impedes his ability to maintain gainful employment. Accordingly, Petitioner's private interest in remaining free from detention is significant.

As to the second *Mathews* factor, Petitioner notes that he received no pre-deprivation process of any kind. *See App.* 8. "The absence of pre-deprivation procedures creates a high risk of erroneous liberty deprivation." *Gomez Romero v. Wamsley*, No. C25-2207-JHC-MLP, 2025 WL 3628633, at *1 (W.D. Wash. Dec. 8, 2025). For that reason, the second *Mathews* factor counsels in favor of Petitioner's release.

Still, the Court must consider the government's interests. Though the Court acknowledges that the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight. *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). Moreover, custody hearings for immigration detention are routine and impose a "minimal" cost on the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, the third *Mathews* factor counsels in favor of granting Petitioner's release from detention.

For these reasons, Petitioner has shown a likelihood of success on the merits of his request for immediate release from detention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:26-cv-00610-MWC-PVC | Date: February 19, 2026 |
| Title:  Beslan Borchashvili v. Fereti Semaia *et al.* | |

      *ii.*      *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty in potential violation of the regulatory strictures governing re-detention.  *See Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, 2025 WL 3468694, at *7 (C.D. Cal. Nov. 19, 2025); *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).  "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'" *Delkash*, 2025 WL 2683988, at *6 (quoting *Hernandez*, 872 F.3d at 999).

Accordingly, this factor weighs in favor of granting the Application.

      *iii.*      *Balance of Equities and Public Interest*

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws.  *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' violation of federal law.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *9 (C.D. Cal. Sept. 12, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:26-cv-00610-MWC-PVC | Date: February 19, 2026 |
| Title:  Beslan Borchashvili v. Fereti Semaia *et al.* | |

*also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has already examined, Petitioner is entitled to immediate release from detention.

IV.  Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)).  "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.* (cleaned up).  "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'"  *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering that Respondents follow the governing law, bond is unnecessary.  *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law.  No bond is required." (footnote omitted)); *Hassanzadeh v. Warden*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *6 (C.D. Cal. Nov. 25, 2025) (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:26-cv-00610-MWC-PVC                                         Date: February 19, 2026

Title:  Beslan Borchashvili v. Fereti Semaia *et al.*

V.      Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1. Respondents must release Petitioner immediately under the same conditions applicable to him prior to his March 26, 2025, detention;
2. Respondents must return to Petitioner all property that they confiscated from him during his arrest and processing into detention; and
3. Respondents may not re-detain Petitioner without providing notice and a pre-deprivation hearing.

The Court further **ORDERS** Respondents to show cause in writing no later than 7 days after this Order as to why a preliminary injunction should not issue.  Petitioner may file a response no later than 7 days after Respondents' filing.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |